# UNITED STATES DISTRICT COURT
# WESTERN DISTRICT OF TEXAS
# AUSTIN DIVISION

| | |
|---|---|
| TAYAUN MESSER, § | |
| § | |
| *Plaintiff* § | |
| § | |
| v. § | |
| § | Case No. 1:20-CV-00125-LY |
| THE LINCOLN NATIONAL LIFE § | |
| INSURANCE COMPANY, § | |
| § | |
| *Defendant* § | |

## REPORT AND RECOMMENDATION
## OF THE UNITED STATES MAGISTRATE JUDGE

TO:  THE HONORABLE LEE YEAKEL
     UNITED STATES DISTRICT JUDGE

Before the Court are Defendant's Motion for Summary Judgment, filed December 11, 2020 (Dkt. 14); Plaintiff's Response to Defendant's Motion for Summary Judgment and Cross-Motion for Summary Judgment, filed January 15, 2021 (Dkt. 17); and the associated response and reply briefs. On March 15, 2021, the District Court referred the motions to the undersigned Magistrate Judge for Report and Recommendation, pursuant to 28 U.S.C. § 636(b)(1)(B), Federal Rule of Civil Procedure 72, and Rule 1(d) of Appendix C of the Local Rules of the United States District Court for the Western District of Texas. Dkt. 22.

## I.   Background

Plaintiff Tayaun Messer, a citizen of Georgia, brings this lawsuit under the Employee Retirement Income Security Act of 1974, as amended, 29 U.S.C. §§ 1001-1461 ("ERISA"). Messer seeks to recover benefits under her employer-provided long-term disability ("LTD") insurance policy.

1

On October 28, 2013, Plaintiff began her employment with Alliance for Cooperative Energy Services Power Marketing, LLC ("ACES"), a nationwide energy management company headquartered in Carmel, Indiana, as a Manager of Regulatory and Market Affairs. As part of her employee benefits, Plaintiff was provided LTD insurance under ACES's ERISA-governed employee welfare benefit plan (the "Policy" or the "Plan"). The Plan was issued and administered by Defendant Lincoln National Life Insurance Company ("Lincoln"), an Indiana company with its principal place of business in Fort Wayne, Indiana. The Policy provides an insured with monthly disability benefits if the insured becomes "Totally Disabled." Dkt. 12-1 at 234. The amount of the monthly disability benefit is calculated based on the insured's basic monthly income from the calendar year before the disability date. *Id.* at 215.

In January 2014, Plaintiff fell at her home and seriously injured her hip. On November 19, 2014, Plaintiff stopped working "due to a diagnosis of a closed fracture of the neck of her femur, avascular necrosis and a labral tear." Dkt. 1 ¶ 6. Plaintiff continued to have discomfort in her hip and underwent two hip surgeries (including a hip replacement) and multiple injections, and also received physical therapy.

On April 16, 2015, Plaintiff filed a claim under the Policy for LTD benefits, alleging that her injuries precluded her from performing her job because she had difficulty sitting, standing, walking, and using stairs. Lincoln approved Plaintiff's claim and began paying her monthly benefits of $7,760.18 for the disability period from May 18, 2015 to June 18, 2015. The Policy provided that benefits would continue for 24 months "as long as you are unable to perform the main duties of your Own Occupation." Dkt. 12-1 at 3992. However, on November 21, 2016, Lincoln terminated Plaintiff's benefits because it found that Plaintiff no longer met the Policy's definition of "Total Disability" from performing her Own Occupation. *Id.* at 3452. Plaintiff

appealed and, on August 14, 2017, Lincoln reversed its decision, reinstated Plaintiff's benefits, and paid Plaintiff $79,686.14 in back benefits. *Id.* at 1197, 1431-32.

Lincoln no longer disputes that Plaintiff is entitled to LTD benefits under the Policy. The parties, however, dispute the amount of monthly benefits Plaintiff is entitled to receive. Plaintiff complains that Lincoln miscalculated her pre-disability income and underpaid her benefits as a result. Specifically, Plaintiff argues that Lincoln should have included a $7,970 bonus she received in 2014 in determining the amount of her monthly disability benefits. Thus, Plaintiff contends that she should be receiving $9,533.52 in monthly disability benefits instead of the $7,291.98 she currently receives.

After exhausting her administrative remedies, Plaintiff filed suit under 29 U.S.C. § 1132(a)(1)(B), alleging that Lincoln has underpaid her $159,000 in benefits owed under the Policy. In its Motion for Summary Judgment, Lincoln argues that its calculation of Plaintiff's monthly benefits is reasonable and supported by substantial evidence. In her Cross-Motion for Summary Judgment, Plaintiff argues that she is entitled to summary judgment because Lincoln's calculation of her monthly benefits is erroneous.

## II.   Legal Standards

### A.  Summary Judgment

Summary judgment shall be rendered when the pleadings, the discovery and disclosure materials, and any affidavits on file show that there is no genuine dispute as to any material fact and that the moving party is entitled to judgment as a matter of law. FED. R. CIV. P. 56(a); *Celotex Corp. v. Catrett*, 477 U.S. 317, 323-25 (1986); *Washburn v. Harvey*, 504 F.3d 505, 508 (5th Cir. 2007). A dispute regarding a material fact is "genuine" if the evidence is such that a reasonable jury could return a verdict in favor of the nonmoving party. *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986). When ruling on a motion for summary judgment, the court is required to

view all inferences drawn from the factual record in the light most favorable to the nonmoving party. *Matsushita Elec. Indus. Co. v. Zenith Radio*, 475 U.S. 574, 587 (1986); *Washburn*, 504 F.3d at 508. A court "may not make credibility determinations or weigh the evidence" in ruling on a motion for summary judgment. *Reeves v. Sanderson Plumbing Prods., Inc.*, 530 U.S. 133, 150 (2000); *see also Anderson*, 477 U.S. at 254-55.

Once the moving party has made an initial showing that there is no evidence to support the nonmoving party's case, the party opposing the motion must come forward with competent summary judgment evidence of the existence of a genuine fact issue. *Matsushita*, 475 U.S. at 586. Mere conclusory allegations are not competent summary judgment evidence, and thus are insufficient to defeat a motion for summary judgment. *Turner v. Baylor Richardson Med. Ctr.*, 476 F.3d 337, 343 (5th Cir. 2007). Unsubstantiated assertions, improbable inferences, and unsupported speculation also are not competent summary judgment evidence. *Id.* The party opposing summary judgment is required to identify specific evidence in the record and to articulate the precise manner in which that evidence supports its claim. *Adams v. Travelers Indem. Co. of Conn.*, 465 F.3d 156, 164 (5th Cir. 2006). If the nonmoving party fails to make a showing sufficient to establish the existence of an element essential to its case and on which it will bear the burden of proof at trial, summary judgment must be granted. *Celotex*, 477 U.S. at 322-23.

On cross-motions for summary judgment, the Court reviews each party's motion independently, in the light most favorable to the non-moving party. *Amerisure Ins. Co. v. Navigators Ins. Co.*, 611 F.3d 299, 304 (5th Cir. 2010).

### B. ERISA

ERISA "permits a person denied benefits under an employee benefit plan to challenge that denial in federal court." *Metropolitan Life Ins. Co. v. Glenn*, 554 U.S. 105, 108 (2008). To bring a successful claim under 29 U.S.C. § 1132(a)(1)(B), the claimant must show by a preponderance of

4

the evidence that he or she qualifies for the benefits provided in that plan. *Singletary v. United Parcel Serv., Inc.*, 828 F.3d 342, 348 (5th Cir. 2016).

"When an ERISA plan lawfully delegates discretionary authority to the plan administrator, a court reviewing the denial of a claim is limited to assessing whether the administrator abused that discretion." *Ariana M. v. Humana Health Plan of Tex., Inc.*, 884 F.3d 246, 247 (5th Cir. 2018) (en banc). For plans that do not have valid delegation clauses, the Supreme Court has held that "a denial of benefits challenged under § 1132(a)(1)(B) is to be reviewed under a *de novo* standard." *Firestone Tire & Rubber Co. v. Bruch*, 489 U.S. 101, 115 (1989).

### III.   Analysis

The Motions for Summary Judgment hinge on a narrow issue: whether the bonus Plaintiff received in 2014 should have been included in the calculation of her "Basic Monthly Earnings" under the Policy. *See* Dkt. 17 at 8 ("As stated earlier, this case hinges on whether the bonus that Ms. Messer earned in 2013, and included in her offer letter prior to beginning employment, is included in the calculation of Basic Monthly Earnings ("BME")."); Dkt. 20 at 1 ("The core question before the Court is whether a bonus, paid almost three months after the calendar year ended, is considered Basic Monthly Earnings for the prior calendar year under the express terms of the Policy."). Before addressing this ultimate issue, the Court first must determine what standard of review applies in this ERISA-governed suit.

#### A.   The Abuse of Discretion Standard Applies

As stated above, when an ERISA plan lawfully delegates discretionary authority to the plan administrator, a court reviewing the denial of a claim is limited to assessing whether the administrator abused that discretion. *Ariana M.*, 884 F.3d at 247 (citing *Firestone Tire*, 489 U.S. at 115); *accord Rittinger v. Healthy All. Life Ins. Co*., 914 F.3d 952, 955 (5th Cir. 2019). When a plan does not delegate discretion to a plan administrator validly, a court reviews denial of benefits

de novo. *Id.* at 255-56 (adopting de novo review for a denial of benefits on any ground unless the benefit plan gives the administrator discretionary authority). The parties dispute which standard applies here.

The Policy contains the following delegation clause:

> Except for the functions that this Policy clearly reserves to the Policyholder or Employer, the Company has the authority to manage this Policy, interpret its provisions, administer claims and resolve questions arising under it. The Company's authority includes (but is not limited to) the right to:
> 1. establish administrative procedures, determine eligibility and resolve claims questions;
> 2. determine what information the Company reasonably requires to make such decisions; and
> 3. resolve all matters when an internal claim review is requested.
>
> Any decision the Company makes in the exercise of its authority shall be conclusive and binding; subject to the Insured Employee's rights to request a state insurance department review or to bring legal action. This provision does not apply to residents of California.

Dkt. 12-1 at 228. Lincoln argues that this provision controls and that the Court must review the claim determination for abuse of discretion. Plaintiff argues that the delegation clause is invalid because Texas prohibits discretionary clauses in insurance policies. *See* TEX. INS. CODE § 1701.062(a).[1]

While Plaintiff is correct that Texas law bans discretionary clauses in insurance policies, her argument is misplaced because Indiana law, not Texas law, applies in this case. *Cf. Rittinger*, 914 F.3d at 955 ("[E]ven though Texas Insurance Code § 1701.062 bans insurers' use of delegation clauses in Texas, Missouri law governs this case."). Here, the Policy contains an Indiana choice of law provision. Dkt. 12-1 at 211 ("This Policy is delivered in the state of Indiana and subject to the laws of that jurisdiction."). In addition, the Policy was issued by an Indiana company to an Indiana

---

[1] The Texas Insurance Code provides that "[a]n insurer may not use a document described by Section 1701.002 in this state if the document contains a discretionary clause." TEX. INS. CODE § 1701.062(a).

employer in the State of Indiana. *See Rittinger*, 914 F.3d at 955 (holding that Texas Insurance Code's ban on insurers' use of delegation clauses did not apply where the policy was sold in Missouri by a Missouri insurer to a Missouri employer containing a Missouri choice of law provision); *Burrell v. Metro. Life Ins. Co.*, No. 1:18-CV-174-RP, 2020 WL 532934, at *6 (W.D. Tex. Feb. 3, 2020) (holding that Texas' ban on delegation clauses in insurance policies did not apply where policy issued in Connecticut contained a New York choice of law provision). Accordingly, the Court finds that Indiana law controls in this case. *See Rittinger*, 914 F.3d at 955.

Plaintiff fails to identify any Indiana law banning discretionary clauses in insurance policies. *See Grimmett v. Anthem Ins. Cos.*, No. 2:11-CV-12623, 2012 WL 4477218, at *7 (E.D. Mich. Sept. 27, 2012) (holding that Michigan's ban on discretionary clauses did not apply where policy contained a choice of law clause requiring the application of Indiana law). Thus, the Policy validly delegates discretion to Lincoln, and the Court reviews Lincoln's calculation of benefits deferentially for abuse of discretion. *See Burrell*, 2020 WL 532934, at *6 ("The Court concludes that because the parties' choice of law is either New York or Connecticut and neither bans discretionary clauses, the LTD Plan validly delegates discretion to MetLife.").

An ERISA claimant bears the burden to show that the administrator abused its discretion. *Nichols v. Reliance Standard Life Ins. Co.*, 924 F.3d 802, 808 (5th Cir.), *cert. denied*, 140 S. Ct. 186 (2019). The Fifth Circuit Court of Appeals has explained that a plan administrator

> abuses its discretion where the decision is not based on evidence, even if disputable, that clearly supports the basis for its denial. If the plan fiduciary's decision is supported by substantial evidence and is not arbitrary and capricious, it must prevail. Substantial evidence is more than a scintilla, less than a preponderance, and is such relevant evidence as a reasonable mind might accept as adequate to support a conclusion. A decision is arbitrary only if made without a rational connection between the known facts and the decision or between the found facts and the evidence. In other words, we must uphold the determination if

7

> our review assures that the administrator's decision falls somewhere on a continuum of reasonableness—even if on the low end.

*Id.*

## B. Calculation of Plaintiff's BME

Federal common law governs rights and obligations stemming from ERISA-regulated plans, including the interpretation of policy provisions at the heart of this dispute. *Green v. Life Ins. Co. of N. Am.*, 754 F.3d 324, 331 (5th Cir. 2014).

> When construing ERISA plan provisions, courts are to give the language of an insurance contract its ordinary and generally accepted meaning if such a meaning exists. We interpret the contract language in an ordinary and popular sense as would a person of average intelligence and experience, such that the language is given its generally accepted meaning if there is one. Only if the plan terms remain ambiguous after applying ordinary principles of contract interpretation are we compelled to apply the rule of *contra proferentum* and construe the terms strictly in favor of the insured.

*Id.* (cleaned up).

The Policy provides that Lincoln will pay "a Total Disability Monthly Benefit to an Insured Employee" if that employee becomes "Totally Disabled." Dkt. 12-1 at 234. The amount of the Total Disability Monthly Benefit equals "the Insured Employee's Basic Monthly Earnings multiplied by the Benefit Percentage [60%] . . . minus Other Income Benefits." *Id.* at 214, 234. The Policy defines Basic Monthly Earnings ("BME"), in relevant part, as:

> 1/12th of the Insured Employee's annual gross earnings from the Employer during the calendar year just prior to the Determination Date. The "Determination Date" is the last day worked just prior to the date the Disability begins.
>
> It is figured from the income box on the Insured Employee's W-2 form, which reports wages, tips and other compensation from the Employer for federal income tax purposes. It includes the Insured Employee's income before taxes and any deductions for pre-tax

8

> contributions to a Section 125 Plan, flexible spending account, Section 401K Plan or qualified deferred compensation plan.[2]
>
> ***
>
> For an Insured Employee who did not receive a W-2 form from the Employer prior to the Determination Date, it is figured by averaging the monthly gross earnings received during the actual period of employment, as shown in the Employer's financial records.

Dkt. 12-1 at 215. In other words, BME is calculated based on the Insured's Employee's W-2 form from the calendar year prior to the last day the insured worked.

Plaintiff began working at ACES on October 28, 2013, and received a $7,970 bonus in 2014. It is undisputed that the last day Plaintiff worked at ACES before taking disability leave was November 18, 2014. Dkt. 17 at 8. Thus, under the terms of the Policy, Plaintiff's BME should have been calculated based on the income box on Plaintiff's W-2 Form from calendar year 2013. Applying this language, Lincoln calculated Plaintiff's BME based on her 2013 W-2 Form.

Plaintiff complains that this was error because her 2013 W-2 Form did not include the $7,970 bonus "that Ms. Messer earned in 2013." Dkt. 17 at 8. Plaintiff argues that because the Policy does not define the term "annual gross earnings," the bonus she earned in 2013 should be part of her gross earnings.

Although it does not define annual gross earnings, the Policy clearly and unambiguously states that BME "is figured from the income box on the Insured Employee's W-2 form," from "the calendar year just prior to the Determination Date" which in this case would be calendar year 2013. Dkt. 12-2 at 215. Plaintiff may have earned the bonus in 2013, but she did not actually receive the bonus until calendar year 2014. Thus, the 2014 bonus was not reported as paid income on Plaintiff's 2013 W-2 Form. As Lincoln explained to Plaintiff in a letter denying her appeal:

---

[2] BME does not include "(1) any Employer contributions to a deferred compensation plan; (2) income received from any car, housing or moving allowance; or (3) income from a source other than the Employer." Dkt. 12-1 at 215.

9

> While your client was issued a bonus in 2014, this was for the tax year of 2014 and would be on the corresponding W-2 and not her 2013 W-2. Your client may have earned a bonus for her performance in 2013, but it was not paid/income in 2013, it was paid in 2014, thus would not be reflective on her 2013 W-2. Furthermore, your client's employer confirmed she had no other income in 2013. So, based on the policy, we would use the W-2 from 2013 to calculate Ms. Messer's BME.

Dkt. 12-1 at 579.

Lincoln's interpretation of the Policy was reasonable and is supported by Fifth Circuit case law. The Fifth Circuit addressed a similar issue In *Dunn v. GE Grp. Life Assur. Co.*, 289 F. App'x 778, 779 (5th Cir. 2008), *abrogated on other grounds by Holland v. Int'l Paper Co. Ret. Plan*, 576 F.3d 240, 247 n.3 (5th Cir. 2009). In *Dunn*, the insured argued that his BME should be adjusted to account for $9,600 in commissions he earned prior to his stroke, even though those commissions were not paid by his employer until after his stroke. The policy defined BME as "your gross monthly compensation from your employer including the gross monthly rate of commissions and Bonus pay during the calendar year(s) prior to your Period of Disability." *Id.* at 782. Although the policy did not explain whether "commissions" were "commissions paid" or "commissions earned," the Fifth Circuit held that it was reasonable for the insurer to interpret the policy to include only those commissions actually paid to the insured in the BME calculation. *Id.* The Court similarly finds that Lincoln's interpretation of the Policy was reasonable here.

The Internal Revenue Service's ("IRS") policy statements also support Lincoln's interpretation of the Policy. In 2019, the IRS explained that bonuses and awards are not taxable until the employee actually receives those bonuses and awards:

> Bonuses or awards you receive for outstanding work are included in your income and should be shown on your Form W-2. . . . However, if your employer merely promises to pay you a bonus or award some future time, it isn't taxable until you receive it or it's made available to you.

10

IRS Publ'n 525, Cat. no. 15047D, Taxable and Nontaxable Income (2019) (Dkt. 20-1 at 4). Because Plaintiff did not receive the bonus until 2014 and it did not appear on her 2013 W-2 Form, it was reasonable for Lincoln to exclude it from Plaintiff's BME for calendar year 2013.

Plaintiff next argues that Lincoln should have included the 2014 bonus in its calculation of Plaintiff's BME because "Ms. Messer did not receive her 2014 W-2 from ACES prior to the Determination Date." Dkt. 17 at 9. Plaintiff attempts to rely on the Policy provision applicable to cases in which the insured did not receive any W-2 form prior to the Determination Date. The Policy provides that where the insured "did not receive a W-2 form from the Employer prior to the Determination Date, [BME] is figured by averaging the monthly gross earnings received during the actual period of employment, as shown in the Employer's financial records." Dkt. 12-1 at 215. This provision, however, is inapplicable here because Plaintiff did receive a W-2 Form prior to her Determination Date—the 2013 W-2 Form. Accordingly, this provision is of no help to Plaintiff.

Because the $7,970 bonus Plaintiff received in 2014 was not reported as paid income on Plaintiff's 2013 W-2 Form, it was reasonable for Lincoln to exclude that amount when it calculated Plaintiff's BME for calendar year 2013. As Lincoln's interpretation of the Policy was reasonable, it did not abuse its discretion in calculating Plaintiff's BME. *See Matassarin v. Lynch*, 174 F.3d 549, 563 (5th Cir. 1999) ("When a plan gives such discretion, a district court will overrule the plan administrator's interpretation of plan terms only if the interpretation is 'arbitrary and capricious.'") (quoting *Firestone Tire*, 489 U.S. at 115); *Silvertooth v. UNUM Life Ins. Co. of Am.*, No. 3:99-CV-0519-M, 2001 WL 21262, at *5 (N.D. Tex. Jan. 8, 2001) ("Since the administrative record creates a reasonable basis for UNUM's determination that the rent concession was 'extra compensation' and not part of Silvertooth's 'basic monthly earnings,' summary judgment is

appropriately granted in favor of UNUM on Silvertooth's ERISA claim."). Accordingly, Lincoln is entitled to summary judgment.

## IV. Recommendation

Based on the foregoing, the undersigned Magistrate Judge **RECOMMENDS** that the District Court **GRANT** Defendant Lincoln National Life Insurance Company's Motion for Summary Judgment (Dkt. 14), **DENY** Plaintiff Tayaun Messer's Cross-Motion for Summary Judgment (Dkt. 17), and enter judgment for Defendant Lincoln National Life Insurance Company.

**IT IS ORDERED** that this case be removed from the Magistrate Court's docket and returned to the docket of the Honorable Lee Yeakel.

## V. Warnings

The parties may file objections to this Report and Recommendation. A party filing objections must specifically identify those findings or recommendations to which objections are being made. The District Court need not consider frivolous, conclusive, or general objections. *See Battle v. United States Parole Comm'n*, 834 F.2d 419, 421 (5th Cir. 1987). A party's failure to file written objections to the proposed findings and recommendations contained in this Report within fourteen (14) days after the party is served with a copy of the Report shall bar that party from de novo review by the District Court of the proposed findings and recommendations in the Report and, except on grounds of plain error, shall bar the party from appellate review of unobjected-to proposed factual findings and legal conclusions accepted by the District Court. *See* 28 U.S.C. § 636(b)(1)(c); *Thomas v. Arn*, 474 U.S. 140, 150-53 (1985).

**SIGNED** on July 16, 2021.

_____
SUSAN HIGHTOWER
UNITED STATES MAGISTRATE JUDGE